# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| HADRIAN MUMPUKU, | § | |
|     *Plaintiff*, | § | |
| | § | Civil Action No. 4:18-cv-00785 |
| v. | § | Judge Mazzant |
| | § | |
| BRAD NEAL, | § | |
|     *Defendant*. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Brad Neal's First Amended Motion for Judgment on the Pleadings (Dkt. #31). Having considered the motion and relevant pleadings, the Court finds the motion should be **GRANTED in part** and **DENIED in part**.

## BACKGROUND

**I.  Factual Summary**

This is an excessive force case arising from an encounter between Plaintiff Hadrian Mumpuku and Defendant Sergeant Brad Neal. The events giving rise to this action occurred on November 5, 2016, and Plaintiff's account of those events is as follows.

Plaintiff reportedly ran out of gas and, as he was walking to find help, was approached by Plano Police. The officers appeared at the scene in response to alleged 9-1-1 calls reporting that Plaintiff was disturbing the peace and knocking on car windows. Eight Plano Police officers allegedly instructed Plaintiff to get on the ground, but Plaintiff, who did not understand why he was being told to get on the ground, did not immediately do so. Plaintiff claims he was then tased three or four times, tackled by police officers, and handcuffed.

Plaintiff recalls being struck in the back of his head with a taser or some other object and feeling a stinging pain from a taser barb or a similar object being rammed into his scalp. Some

time after this took place, the Fire Department was called—despite Defendant's alleged refusal to call—and placed an object over Plaintiff's head upon arrival. Plaintiff was placed in an ambulance, where he was sedated, transported to a local Plano hospital, and subsequently handcuffed to the hospital bed.

One taser probe was removed from Plaintiff, and he remained in the emergency room until his wife arrived to pick him up. Apparently before Plaintiff was released, the hospital drew his blood without his consent.

That weekend, while attending church, Plaintiff felt a terrible pain in the back of his head. Plaintiff's wife took him to the hospital, and doctors took X-rays of his scalp. The doctors then opened his scalp to determine if there was an object lodged in his scalp that was causing the pain. The doctors located the object and stated that it was lodged close to Plaintiff's skull. After removing most of the object from Plaintiff's scalp, the doctors identified the item in Plaintiff's head as a taser barb. The doctors informed Plaintiff that some portions of the taser barb remained in his head and would require another surgical procedure before they could be fully extracted.

## II. Procedural History

On April 15, 2019, Plaintiff filed an amended Complaint (Dkt. #29).[1] On April 29, 2019, Defendant filed an Answer (Dkt. #30). That same day, Defendant filed a Motion for Judgment on the Pleadings (Dkt. #31). On May 31, 2019, Officer Neal filed a Notice of No Response by Plaintiff to Officer Neal's First Amended Motion for Judgment on the Pleadings (Dkt. #32).

---

[1] Plaintiff had filed an earlier complaint naming three additional defendants—City of Plano, Plano Police Department, and John Doe (Dkt. #1). However, the Court ordered Plaintiff to file an amended complaint providing more factual detail in support of his claims (Dkt. #27), which named only Sergeant Brad Neal as defendant (Dkt. #29). The amended complaint is the live pleading.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not the delay trial—a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). "A motion brought pursuant to Rule 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990) (citation omitted); *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312–13 (5th Cir. 2002). "The central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief." *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir. 2001) (citing *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 440 n.8 (5th Cir. 2000)).

"Pleadings should be construed liberally, and judgment on the pleadings is appropriate only if there are no disputed issues of fact and only questions of law remain." *Great Plains Tr.*, 313 F.3d at 312 (quoting *Hughes*, 278 F.3d at 420). The standard applied under Rule 12(c) is the same as that applied under Rule 12(b)(6). *Ackerson v. Bean Dredging, LLC*, 589 F.3d 196, 209 (5th Cir. 2009); *Guidry* v. *Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007).

A Rule 12(b)(6) motion allows a party to move for dismissal of an action when the complaint fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). Each claim must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

When considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts in plaintiff's complaint and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012). The Court may

consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The Court must then determine whether the complaint states a claim for relief that is plausible on its face. "A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "But where the well-pleaded facts do not permit the [C]ourt to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the Court should identify and disregard conclusory allegations, for they are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664. Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id.* "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements.'" *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009) (citation omitted). This evaluation will "be a context-specific task that requires the reviewing [C]ourt to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

**ANALYSIS**

**I.      Statute of Limitations**

Plaintiff filed suit within the applicable limitations period—two (2) years—but did not serve Defendant until ninety-six (96) days later, by which time the limitations period had expired. Defendant therefore argues that Plaintiff's claims are time barred because Plaintiff did not timely procure service of process. Plaintiff did not respond to Defendant's argument.[2]

After reviewing the complaint and relevant motion, the Court finds that Plaintiff has at least plausibly alleged a non-time barred claim. Accordingly, Plaintiff's pleadings are sufficient to survive a motion to dismiss, and Defendant's motion on this ground should be denied.

**II.     Excessive Use of Force Claim**

To establish § 1983 liability, a plaintiff "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 678. Public officials whose positions entail the exercise of discretion may be protected by the defense of qualified immunity from personal liability. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When a defendant asserts the defense of qualified immunity and has established that the alleged actions were conducted pursuant to the exercise of his discretionary authority, the burden then shifts to the plaintiff to rebut this defense. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002).

Courts have historically conducted a two-pronged analysis to determine whether a defendant is entitled to qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). First, a court must determine whether a "constitutional right would have been violated on the facts

---

[2] The Court notes that Plaintiff did not file a response to Defendant's motion to dismiss or otherwise address any of Defendant's arguments for dismissal. As the Court relies on parties' motions and arguments in assessing the claims made by each side, the Court would encourage Plaintiff to take a more active role in prosecuting its case.

alleged." *Flores v. City of Palacios*, 381 F.3d 391, 395 (5th Cir. 2004). Second, if a constitutional right was violated, a court then determines whether "the defendant's actions violated clearly established statutory or constitutional rights of which a reasonable person would have known." *Id*. The law may be deemed to be clearly established if a reasonable official would understand that his conduct violates the asserted right. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The official's subjective motivation is irrelevant to the qualified immunity defense except as far as it is relevant to the underlying constitutional claim. *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998). A government official's conduct violates clearly established law when, at the time of the challenged conduct, "[t]he contours of the right [are] sufficiently clear" such that every "reasonable official would have understood that what he is doing violates that right." *Creighton,* 483 U.S. at 640. The clearly established inquiry does not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate. *See id.*; *Malley v. Briggs*, 475 U.S. 335, 341 (1986). The Supreme Court instructs courts "to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236–37 (2009).

      A.      *Was There a Violation of a Constitutional Right?*

Plaintiff alleges Defendant violated his Fourth Amendment rights by applying excessive force during his arrest. To prevail on an excessive-force claim, Plaintiff must show "(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Cooper v. Brown*, 844 F.3d 517, 522 (5th Cir. 2016) (quoting *Elizondo v. Green*, 671 F.3d 506, 510 (5th Cir. 2012)). "The second and third elements collapse into a single objective reasonableness inquiry, guided by the following *Graham*

factors: 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Peña v. City of Rio Grande City*, 879 F.3d 613, 619 (5th Cir. 2018) (citation omitted) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

Plaintiff's allegations satisfy the injury prong. Indeed, Plaintiff alleges that he was tased three to four times and tackled by officers. Moreover, Plaintiff's allegations indicate that one of the taser barbs became lodged in his head, causing Plaintiff to experience terrible pain in his head and ultimately to undergo medical treatment to have the barbs surgically extracted from his scalp. Thus, the central question that remains is whether Plaintiff pleaded facts that plausibly suggest the officer's conduct was objectively unreasonable.

In excessive-force claims, the reasonableness of an officer's conduct depends on "the facts and circumstances of each particular case." *Graham*, 490 U.S. at 396. The "reasonableness" of a particular use of force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* As such, the Court's inquiry is "whether the officer['s] actions [we]re 'objectively reasonable' in light of the facts and circumstances confronting [him], without regard to [his] underlying intent or motivation." *Cooper*, 844 F.3d at 522 (alterations in original) (quoting *Graham*, 490 U.S. at 397).

The Fifth Circuit's decision in *Peña v. City of Rio Grande City*, 879 F.3d 613 (5th Cir. 2018) is instructive. In the district court, Ms. Peña reported that she was in a vehicle with Mr. Peña that was parked near the Rio Grande City Police Department. *Pena v. City of Rio Grande City*, No. 7:16-cv-79, 2016 WL 6084639, at *1 (S.D. Tex. Oct. 17, 2016). Mr. Peña allegedly asked Ms. Peña to exit the vehicle, and when Ms. Peña refused, the police intervened. *Id.* The officer who approached the vehicle asked Ms. Peña to exit the vehicle, and she again refused. *Id.*

7

The officer urged Ms. Peña to exit the vehicle or he would tase her, and Ms. Peña responded by exiting the vehicle and fleeing. *Id.* As she was running, another officer tased her, allegedly causing a taser barb to become lodged in her scalp and another in her back. *Id.* Upon being tased, Ms. Peña lost control of her body and fell, which caused her to sustain bruising, burns, lacerations, and two broken teeth. *Id.* Now, Ms. Peña has minor scars, has had one tooth removed, and experiences headaches. *Id.*

Ms. Peña claimed that the officers involved violated her Fourth Amendment rights by using excessive force. *Id.* at *4. Specifically, she claimed that the officer's use of a taser was an excessive use of force. *Id.* The officer filed a 12(b)(6) motion to dismiss, denying using excessive force and, alternatively, asserting the defense of qualified immunity. *Id.* Based on these facts, the district court granted the 12(b)(6) motion to dismiss. *Id.* at *5. It concluded that Ms. Peña's allegations that the officers acted unreasonably did not satisfy "the heightened pleading standard" and that her excessive force claim was conclusory. *Id.*

On appeal, the Fifth Circuit vacated the district court's judgment of dismissal. *Peña*, 879 F.3d at 625. It held that the excessive force claims against the officers were sufficient to survive the pleading stage. *Id.* at 620, 625.³ The court reasoned as follows:

> Crucially, Peña's proposed complaint alleges that she was not suspected of any crime when she fled . . . . That characterization is belied by the police reports, but on a motion to dismiss, Peña's well-pleaded factual allegations enjoy a presumption of truth. Given her plausible allegation that she was a non-suspect at the time of her initial tasing, Peña's pleadings in this regard also state a claim against Salinas for excessive force.

---

³ More specifically, the Fifth Circuit held that the excessive force claims against the officers survived the first *half* of the analysis at the pleading stage. The reason for this is that the question whether the officers had qualified immunity due to the right not being clearly established at the time the alleged violation occurred was not on appeal. The only question on appeal was whether the pleadings were sufficient to state a claim of excessive use of force. The district court decided that they were not, and the Fifth Circuit vacated this judgment. But it remanded with instructions to consider whether Plaintiff's pleadings survived the *full* qualified immunity analysis.

8

*Peña*, 879 F.3d at 620.

Many of the facts in this case resemble those in *Peña*. First and most importantly, like Ms. Peña, Mr. Mumpuku alleges that he was a non-suspect at the time he was tased. Indeed, his amended complaint states that he "had not been arrested or charged with any crime or other wrongdoing" and "had not committed any infraction or provided any basis to legally justify the force used" (Dkt. #29). Moreover, Ms. Peña and Mr. Mumpuku were tased in a similar fashion. Both were allegedly facing away from the officer when they were tased, both alleged they were behaving lawfully when tased, both received a taser barb to the back and to the head, and both fell to the ground.

According Plaintiff's factual allegations the presumption of truth, the Court finds that Plaintiff's pleadings at least state a plausible claim against Defendant for excessive force. Like in *Peña*, certain aspects of Defendant's account of the facts contradict Plaintiff's. However, at the 12(b)(3) stage, the Court accepts all of Plaintiff's well-pleaded allegations even if they may be contravened by Defendant's evidence at some later stage. Therefore, Plaintiff's pleadings plausibly allege an excessive use of force claim, and the Court turns now to the second prong of the qualified immunity analysis.

    B.    *Was the Constitutional Right Clearly Established at the Time of the Violation?*

The second question the Court must address in the qualified immunity analysis is "whether the right was clearly established at the time of the violation." *Cooper*, 844 F.3d at 522. "To answer that question in the affirmative, [the Court] must be able to point to controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity." *Id.* at 524 (quoting *Morgan v. Swanson*, 659 F.3d 359, 371–72 (5th Cir. 2011) (en banc)). But "this does not mean that 'a case directly on point' is required." *Id.*

(quoting *Morgan*, 659 F.3d at 372). Rather, "existing precedent must have placed the statutory or constitutional question *beyond debate*." *Id.* (quoting *Morgan*, 659 F.3d at 372).

"The central concept is 'fair warning.'" *Id*. (quoting *Morgan*, 659 F.3d at 372; *Newman v. Guedry*, 703 F.3d 757, 763 (5th Cir. 2012)). "The law can be clearly established despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights." *Id.* (quoting *Newman*, 703 F.3d at 763). "Furthermore, 'in an obvious case,' the *Graham* excessive-force factors themselves 'can clearly establish the answer, even without a body of relevant case law.'" *Id.* (quoting *Newman*, 703 F.3d at 764).

Fifth Circuit case law clearly establishes that "once an arrestee stops resisting, the degree of force an officer can employ is reduced." *Id.* "[A]lthough the right to make an arrest necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it, the permissible degree of force depends on [the *Graham* factors]." *Id.* at 524–25 (quoting *Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008) (alteration in original)). To determine whether the use of force in this case violated Plaintiff's clearly established constitutional rights, a thorough look at Fifth Circuit precedent is in order.

In *Bush*, the plaintiff, Ms. Bush, approached a police officer and greeted him as he was interviewing a witness. *Bush*, 513 F.3d at 496. Ms. Bush overheard the witness make a comment about her sister, and she became enraged and threw a cup of ice water at the witness. *Id.* The officer placed Ms. Bush under arrest for simple battery, and while she was partially handcuffed, Ms. Bush pulled her right arm away. *Id.* According to Ms. Bush's account of the facts, which the court accepted as true, once the officer grabbed her right arm, she stopped resisting arrest. *Id.* Once she was handcuffed, Ms. Bush claimed, the officer placed his hand behind her neck and

slammed her face into the window of a nearby vehicle, which broke two of her teeth and injured her jaw. *Id.* Ms. Bush sued under § 1983 for excessive force, and the officer asserted qualified immunity. *Id.* at 500. The Fifth Circuit affirmed the district court's denial of qualified immunity to the officer, holding that slamming an arrestee's face into a vehicle while the arrestee was not resisting arrest or attempting to flee was objectively unreasonable. *Id.* at 502.

In *Newman*, a police officer pulled over a car containing three individuals: Willie, the driver; Newman, the front-seat passenger and plaintiff; and Mario, the passenger in the back seat. *Newman*, 703 F.3d at 759. After learning that Mario had a warrant out for his arrest, the officer handcuffed him. *Id.* Seeing Mario riled up, Newman and Willie stepped out of the car and urged him to settle down. *Id.* Two more officers then arrived—Guedry and Burke, the defendants on appeal—and they approached Newman, whose hands were visible and on the roof of the vehicle, to conduct a pat-down search. *Id.* Newman's account of the pat-down indicates that Guedry's hand remained on his crotch for quite some time, prompting Newman to remark: "Ain't nothing there but nuts. You acting like you trying to get them." *Id.* at 760. After this, Newman claimed that Guedry shoved him in the back and Burke struck him thirteen times with his baton in less than ten seconds. *Id.* Guedry then tased Newman twice, and after he fell to the ground, tased him a third time. *Id.* Newman claimed that he complied with every command given him. *Id.* Newman sued Guedry and Newman under § 1983 for excessive use of force, and both officers asserted qualified immunity. *Id.* The Fifth Circuit, evaluating only the summary judgment record before it, affirmed the district court's denial of the officers' motion for summary judgment. *Id.* at 759. It held that the officers' conduct was objectively unreasonable in light of clearly established law at the time of the incident. *Id.* at 764; *Peña*, 879 F.3d at 620 (explaining that the *Newman* court held

11

it "objectively unreasonable for officers to tase a non-resisting suspect" who they believed to be unarmed and who they knew was not attempting to flee).

Finally, in *Zimmerman v. Cutler*, the plaintiff, Mr. Zimmerman, found himself in a heated argument and standoff with another individual early one morning near some bars in San Marcos, Texas. 657 F. App'x 340, 342 (5th Cir. 2016). The heated standoff did not come to blows, but instead was interrupted by a police car that appeared at the scene. *Id.* Upon seeing the police car, Mr. Zimmerman fled the scene, and the police officer inside the squad car exited and gave chase. *Id.* Mr. Zimmerman did not make it far before the officer tased him in the back with a single taser shot and then placed him under arrest. *Id.* The taser shot caused Mr. Zimmerman to fall and scrape his right elbow and right hand, and X-rays later revealed that he fractured his radius. *Id.* at 342–43. Mr. Zimmerman sued the officer under § 1983 for excessive use of force, and the officer asserted qualified immunity. *Id.* at 343. The Fifth Circuit affirmed the district court's grant of summary judgment in favor of the officer. *Id.* at 349. Specifically, it held that "at the time of Zimmerman's arrest it was not clearly established (so as to give [the officer] notice) that a single shot or use of a Taser to halt a fleeing misdemeanor suspect would amount to excessive force." *Id.* at 347.

The feature that distinguishes *Zimmerman* from *Bush* and *Newman*[4] is the fact that in *Zimmerman*, the record established that the plaintiff was actively fleeing or actively resisting arrest. *Id.* at 342. *Bush* and *Newman*, on the other hand, involved plaintiffs who were not attempting to flee or resist arrest at the time of the incident that allegedly involved the use of

---

[4] In fact, there is a third notable Fifth Circuit case reaching the same conclusion as that in *Bush* and *Newman*: *Cooper v. Brown*, 844 F.3d 517 (5th Cir. 2016). Though *Cooper* was not decided until December 27, 2016, a month and a half after the events giving rise to this suit occurred, it involved incidents that occurred back in 2013. The *Cooper* court held that it was clearly established as of April 2013 that using a K9 unit to subdue a compliant and non-threatening arrestee was objectively unreasonable. *Cooper*, 844 F.3d at 525. The *Cooper* court relied on the reasoning set forth in both *Bush* and *Newman* in analyzing the "clearly established" prong.

excessive force. And indeed, the Fifth Circuit has considered this distinction important in qualified immunity cases; in *Zimmerman*, the court distinguished two cases cited by Mr. Zimmerman on this very ground. *Id.* at 346 (explaining that the denial of qualified immunity to the defendant officers in *Goodwin v. City of Painesville*, 781 F.3d 314 (6th Cir. 2015) and *Brown v. City of Golden Valley*, 574 F.3d 491 (8th Cir. 2009) was due to the fact that each involved the use of "[t]asers on plaintiffs who were neither fleeing nor actively resisting arrest").

In view of these precedents, the Court turns to the facts of this case. In his amended complaint, Plaintiff states that at the time of the encounter, he had not committed any infraction, did not pose a threat to the officers or anyone else, and was clearly not carrying any weapon. Plaintiff was allegedly turned away from the officer when he was tased three to four times, and there is no specific indication that he was attempting to flee or otherwise resist arrest. These facts, taken as true and considered in the light most favorable to Plaintiff, more closely resemble those in *Bush* and *Newman* than those in *Zimmerman*. This case, according to Plaintiff, involved more than "the one-time application of a Taser," as was the case in *Zimmerman*. *Zimmerman*, 657 F. App'x at 346. Moreover, at this stage, the Court accepts as true Plaintiff's allegations that he had not committed an offense; did not pose a threat; was unarmed; and was apparently not actively attempting to flee or resist arrest. Thus, contrary to the situation in *Zimmerman*, it does not appear that the taser was used to stop "an actively-fleeing or actively-resisting suspect." *Id.* at 346. Accordingly, consistent with the results reached in *Bush* and *Newman*, the Court finds that Plaintiff has adequately pleaded that Defendant had "fair warning" that his use of force was objectively unreasonable in light of clearly established law at the time of the incident.

In sum, the Court finds that Plaintiff has adequately pleaded facts establishing that (1) Defendant used excessive force; and (2) Defendant's use of force was a violation of Plaintiff's

13

clearly established constitutional rights at the time. Because the answers to both questions in the Court's qualified immunity analysis favor Plaintiff, the Court finds Defendant is not entitled to dismissal based on qualified immunity at the 12(b)(3) stage.

## III. Eighth Amendment Claim

Plaintiff also claims that Defendant's actions caused him to suffer cruel and unusual punishment in violation of his Eighth Amendment rights. This claim should be dismissed. "The protections of the Eighth Amendment against cruel and unusual punishment are limited in scope to convicted prisoners and do not apply to pretrial detainees." *Morin v. Claire*, 77 F.3d 116, 120 (5th Cir. 1996). At the time the event giving rise to this claim occurred, Plaintiff was not a convicted prisoner. Therefore, Plaintiff cannot claim the protections of the Eighth Amendment here.

## IV. Deliberate Indifference Claim

Plaintiff purports to bring a deliberate indifference claim against Defendant for failure to tend to Plaintiff's serious medical needs after he was tased. Plaintiff fails to specifically and separately plead it as a Fourteenth Amendment claim, including it instead with his Eighth Amendment claim. In addition, the only statements in Plaintiff's amended complaint related to deliberate indifference are the following:

10. The Fire Department was eventually called (after [Officer Neal's] deliberate refusal to in violation of the PPD Use of Force Policy) arrived on the scene and they placed something over Plaintiff's head. Upon information and belief, this object was a spit mask, which made it hard for Plaintiff to breathe.

57. Defendant Neal showed deliberate indifference to Plaintiff's serious medical needs and wanton infliction of pain.

After consideration, the Court finds that these allegations are conclusory. Conclusory allegations, without more, are insufficient to state a claim for relief because they are "not entitled

14

to the assumption of truth." *Iqbal*, 556 U.S. at 664. However, instead of dismissing Plaintiff's deliberate indifference claim at this stage, the Court will give Plaintiff an opportunity to amend his complaint and plead more specific factual allegations as to that claim.

V.    **Race Discrimination Claim**

Finally, Plaintiff claims that Defendant discriminated against him on the basis of his race. The only statements in Plaintiff's amended complaint mentioning race are the following:

1. Plaintiff is Hadrian Mumpuku, an African American resident.

19. Upon information and belief, [Defendant] and the other PPD officers on the scene were Caucasian.

46. Upon information and belief, Plaintiff was racially-profiled because he is black.

47. Upon information and belief, there is a clear racial disparity in Plano and the PPD has a history and pattern of intentionally discriminating against African Americans and other minorities.

Like the allegations supporting Plaintiff's deliberate indifference claim, the allegations supporting his race discrimination claim are conclusory and therefore insufficient. The Court will allow Plaintiff to amend his complaint and plead more specific factual allegations as to his race discrimination claim.

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Defendant Brad Neal's First Amended Motion for Judgment on the Pleadings (Dkt. #31) is **GRANTED in part** and **DENIED in part**.

Plaintiff may pursue his § 1983 claim based on excessive use of force, but his § 1983 claim based on a violation of the Eighth Amendment is **DISMISSED with prejudice**. Moreover, Plaintiff is **ORDERED** to amend his complaint to plead more specific factual allegations as to his Fourteenth Amendment deliberate indifference claim and his race discrimination claim.

**IT IS SO ORDERED.**

**SIGNED this 2nd day of December, 2019.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE