## UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS DALLAS DIVISION

**FILED**

HADRIAN MUMPUKU, *Individually*,

*PLAINTIFF,*

vs.

CITY OF PLANO, PLANO POLICE
DEPARTMENT, BRAD NEAL, *Individually*,
JOHN DOE, *Individually*,
City
MEDICAL CENTER OF PLANO

*DEFENDANTS.*
H.M

DEC **1 5** 2020

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

**CIVIL ACTION No:**

4:18cv785

Amended
## PLAINTTIFS' ORIGINAL COMPLAINT AND JURY DEMAND

COMES NOW Plaintiff, Hadrian Mumpuku, ("Plaintiff") by and through his undersigned attorney, bringing this action against the City of Plano, the Plano Police Department, Officer Brad Neal, individually and, Officer John Doe, Individually as said Defendants, jointly and severally, have denied Plaintiff his rights as guaranteed by the Constitution and laws of the United States of America and the State of Texas.

## I. PRELIMINARY STATEMENT

Plaintiff, Hadrian Mumpuku, brings this lawsuit against Defendant, Brad Neal, individually and the City of Plano, the "Defendants" together to remedy violation of his civil rights and the use of excessive force on the part of the Defendant Brad Neal, and the City of Plano, the "Defendants" together to remedy violation of his right to public information pursuant to the Texas Open Records Act. Officer Neal used excessive force by using a taser gun and tasering Plaintiff without probable cause when Plaintiff had not committed any infraction or provided any basis to legally justify the force used by Defendant Neal in violation of the applicable City using Force Policy and federal law.

This civil rights action challenges as excessive force the unjustified tasing of Hadrian Mumpuku, by Plano police officer Brad Neal.  Mr. Mumpuku was not engaged in any criminal activity and posed no threat to anyone when he was tased on November 5, 2016.  The Plaintiff hopes that through this case he will finally secure a full explanation of the events of that night; impose accountability on those responsible for his suffering and damages, receive fair compensation. In the aftermath Plaintiff will share what he learns with others in order to prevent future needless injustices and/or deaths due to improper illegal use of tasers.

## II.   **PARTIES**

1. Plaintiff is Hadrian Mumpuku an African American resident of (Lewisville, Texas and) a citizen of the State of Texas at the time of his tasing and Officer Neal's unlawful conduct.

2. Defendant City of Plano and can be served with summons upon the Mayor of the City of Plano, Harry LaRosiliere, at the Plano Municipal Center, 1520 Avenue K, Plano, Texas, 75074.

3. Defendant Plano Police Department is a political subdivision of the City of Plano and can be served with summons upon the Mayor of the City of Plano, Phil Dyer, at the Plano Municipal Center, 1520 Avenue K, Plano, Texas, 75074.

4. Defendant Brad Neal was at all times relevant to this action a law enforcement officer employed by the Plano Police Department. Neal is a "person" under 42 U.S.C. §1983 and at all times relevant to this case acted under color of law.  He is sued solely in his individual capacity.

5. Defendant ~~Baylor Regional Medical Center at Plano~~ Medical City of Plano *(H.M)* is a corporation with its principal and registered offices at ~~2001 Bryan Street, Suite 2300, Dallas, Texas 75201. It may be served with process by serving its registered agent, CT Corporation System, at 1999 Bryan Street, Suite 900, Dallas, Texas 75201.~~ 3901 W 15th St   Plano, Texas  75075

6. Defendant John Doe was, at all times material to this suit, an employee of the Plano Police Department. Each of the acts complained of herein arises from the conduct of John Doe while acting under color of state law and was committed within the scope of his employment and authority with Collin County.

## III.   JURISDICTION AND VENUE

7. The above paragraphs are incorporated herein by reference.

8. Jurisdiction in this Honorable Court is based on federal question 28 U.S.C. §1331; supplemental jurisdiction over state law claims is granted by 28 U.S.C. §1367.

9. Venue is proper in the Eastern District of Texas, Sherman Division, as this is the district where the claim arose in accordance with 29 U.S.C. § 1391(b).

## IV.   FACTS

A.   Plaintiff Runs out of Gas

10. The above paragraphs are incorporated herein by reference.

11. Officer Neal, in a number of unlawful and discriminatory acts used excessive force by using a taser gun on Plaintiff without any justification. Upon information and belief, that Neal and the other PPD officers on the scene were Caucasian.

12. On November 5, 2016 Plaintiff ran out of gas and began walking to find a gas station and other help.

13. On this evening Neal unjustifiably stopped and detained Plaintiff without any probable cause. Without warning, he deployed the probes twice to Plaintiffs' back.

14. Mr. Mumpuku was complying with the officer's commands when Officer Neal fired with malice and/or deliberate indifference used the taser in "stun mode".  Neal use such force with this process that the metal barb piece of his taser gun penetrated the back of Plaintiffs skull and lodged in his scalp.  This caused Plaintiff extreme pain. his taser at Mumpuku in probe mode.

15. Upon information and belief, after the Plaintiff went down writhing in pain, Defendant Neal switch the taser to Drive Stun mode and rammed it into the back of Plaintiff's head.

16. "Probe mode" is a function of the taser device whereby two barbs are deployed at a subject and a continuous electric shock is administered to the suspect through the barbs.

17. "Drive Stun mode" is a function of the taser device, when used properly, whereby the probes come in contact with the skin and do not penetrate, thus causing the circuit to be complete through the surface of your skin or by the "arc" occurring through air.

18. Officer Neal gave no warning or announcement that he was going to deploy his taser probes twice or use the Drive Stun mode in this manner.

19. Mr. Mumpuku did not pose a threat to any of the officers or anyone else.

20. Mr. Mumpuku was clearly not carrying any weapon.

21. Mr. Mumpuku then fell face first to the ground. Within a short period of time Mr. Mumpuku became unresponsive.

22. The Plano Fire Department was called to treat Mr. Mumpuku.

23. The EMTs from the Fire Department provided treatment when they arrived and then transported Mr. Mumpuku to Medical ~~Center~~ *City* of Plano ("MCP"). The chart below depicts the findings of the MCP physicians and other professionals who purported to provide Plaintiff care.

| PLAINTIFF'S MEDICAL EVIDENCE – INJURIES |
| --- |
| **Free Text HPI Notes**<br>Free Text HPI Notes<br>29 y/o M brought to the ED by PD after he was found "not acting right" and tapping on car doors today. The pt was combative when the police approached him, and he was tased x2 in the back and the posterior head. EMS administered 400 mg ketamine and 5 mg versed when pt remained aggressive after being tased. He arrives to the ED in an iatrogenic trance. |
| **Text/Dict Notes**<br>Pt has one taser probe in the back of his head, along w/ a small hematoma. Pt blinks to sternal rub. |

24. Shortly after discharge from MCP without any x-rays to his head injury, Plaintiff continued experience an extreme headache. Plaintiff sought treatment at Baylor Scott & White Medical Center—Centennial ("BSWMC-Centennial"). There, medical professionals rendered a diagnosis that included the findings summarized in the following images:

```
1  S09.90XA Unspecified injury of head, initial encounter
2  S00.05XA Superficial foreign body of scalp, initial encounter
3  Y35.813A Legal intervnt involving manhandling, suspect injured, init
```

| DISCHARGE INSTRUCTIONS | FORMS | |
|---|---|---|
| FOREIGN BODY, Soft Tissue (Removed)<br>Closed Head Injuries - HEAD INJURY, No Wake-Up (Adult)<br>FOREIGN BODY, Soft Tissue [Not Removed] | Medication Reconciliation<br>Work Release Form - 1 day<br>Work Release Form - 2 days<br>Family Work Release | |
| **FOLLOW UP INSTRUCTIONS** | **PRESCRIPTIONS** | |
| **Private Physician**<br>When: As needed<br>**Smart, Kenneth (Surg - Plastic)**<br>When: 2 - 3 days; Reason: Further diagnostic work-up, Recheck today's complaints<br>**Najera, Robert (Surg - Plastic, Surg - Hand, Oral & Maxofacial Surgery (OMFS))**<br>When: 2 - 3 days; Reason: Further diagnostic work-up, Recheck today's complaints | Cephalexin<br>Motrin<br>Tylenol-Codeine #3 | |
| **SPECIAL NOTES** | | |
| Foreign body removed, piece of barb from the taser--<br><br>As discussed, the small, hook like barb piece that we attempted to get was not found, but the larger metal piece removed. Despite attempts at localization, this was unable to be retrieved at this time.<br><br>Will provide referral to plastic surgeon who could evaluate this and do a further scalp dissection to remove it.<br><br>Pain medicine as needed and staples in the scalp out in 5 days, unless you go to the plastic surgeon before then who will use the same incision made tonight to retrieve the retained foreign body. This may be the better course of action since the wound will still be semi-open | | |

## TESTS AND PROCEDURES

**Labs**
None

**Rad**
CT Head or Brain WO Contrast: blunt head trauma with worsening HA after altercation, Cervical Spine CT W/O Contrast: neck pain after altercation, Skull Limited: skull Xray to eval that the FB seen on CT has been fully removed

**Procedures**
FB removal other, FB removal other

**Other**
None

Presentation:
11/07
19:56 Method of Arrival: Ambulatory,                                    rjb
19:56 Acuity: ESI 3,                                                     rjb
19:56 Presenting complaint: Patient states: headache for the last 3 days  rjb
      that started after the police hit the back of his head with a blunt
      object. patient was at Plano hospital and was discharge there with no
      medication. patient states that the doctor just briefly look at the
      head but no test was done. Recent Travel: No travel inside or outside
      the country in the last 30 days. No exposure to anyone who traveled
      in last 30 days. Acuity: ESI 3. Method of arrival: ambulatory, by
      self with steady gait. Communication: Speaks Fluent English. Pt.
      Arrived From: Home.

```
Tri. Assess:
19:59 Headache History: a change in the character of the headache the        rjb
      patient is experiencing has occured. General: Appears well developed,
      well nourished, well groomed, uncomfortable, Is appropriate for age,
      cooperative. Neuro: Level of Consciousness is awake, alert, Oriented
      to person, place, time, Reports blurred vision headache. Pain:
      Complains of pain in head Pain currently is 9 out of 10 on a pain
      scale. Respiratory: Airway is patent Respiratory effort is even,
      unlabored, Respiratory pattern is regular, symmetrical. Sepsis
      Screening: Based on my assessment, there is no clinical suspicion of
      infection currently present. Currently 2 or more SIRS criteria are
      not present.

Assessment:
21:30 General: states he was hit on the back of the head by police a few     k14
      days ago, c/o worsening headache since injury. General: Appears in no
      apparent distress, well developed, well nourished, well groomed, Is
      appropriate for age, cooperative. Pain: Complains of pain in head
      Pain currently is 9 out of 10 on a pain scale. Quality of pain is
      described as aching. I agree with the Triage Nurse's assessment as
      documented in the triage assessment section. Neuro: Level of
      Consciousness is awake, alert, Oriented to person, place, time, Gait
      is steady, Speech is normal, Facial symmetry appears normal, Pupils
      are PERRLA, Reports headache Denies weakness blurred vision numbness.
      Cardiovascular: Capillary refill is brisk in bilateral fingers, No
      chest pain. Respiratory: Airway is patent Respiratory effort is even,
      unlabored, Respiratory pattern is regular, symmetrical. GI: Denies

Name:Hadrian Mumpuku
MRN:000343947
Account#:006216188
Page 2 of 5
```

```
22:52 General: Spoke with Quinice with Plano PD, asked if they needed to
      send an officer out to check FB. She states that they do not need to
      send anyone out. But if we felt any investigation needed to be done,
      we would need to contact Frisco PD.
23:51 General: Patient awaiting CT results prior to discharge.
```

```
Procedure:
11/07
20:44 CT Head or Brain WO Contrast: blunt head trauma with worsening HA       EDMS
      after altercation Ordered.
20:44 Cervical Spine CT W/O Contrast: neck pain after altercation Ordered.    EDMS
20:44 Imaging: CT ordered.                                                    k14
22:47 Assist provider, foreign body removal of metal rod from scalp Set up    k14
      for procedure. Performed by Phillip Admire MD Dressed with 4X4s,
      tape, Patient tolerated well.
23:29 Skull Limited: skull Xray to eval that the FB seen on CT has been       EDMS
      fully removed Ordered.
11/08
00:40 Assist provider, foreign body removal of from scalp Set up for          lr4
      procedure. Performed by Phillip Admire MD Dressed with 4X4s, tape,
      Patient tolerated well.
```

21:20 19:56 Presenting complaint: Patient states: headache for the last 3 days that started after the police hit the back of his head with a blunt object. patient was at Plano hospital and was discharge their with no medication. patient states that the doctor just briefly look at the head but no test was done. rjb

19:56 Presenting complaint: Patient states: headache for the last 3 days that started after the police hit the back of his head with a blunt object. patient was at Plano hospital and was discharge thoro with no medication. patient states that the doctor just briefly look at the head but no test was done. Recent Travel: No travel inside or outside the country in the last 30 days. No exposure to anyone who traveled in last 30 days. Acuity: ESI 3. Method of arrival: ambulatory, by self with steady galt. Communication: Speaks Fluent English. Pt. Arrived From: Home.

20:44 The patient or guardian reports injury, pain, swelling. The complaints affect the right side of the back of head. Context of injury: The problem was sustained outdoors. the pt states that a couple days ago, he was apprehended by the police for hallucinating---was using drugs. He states that he was hit on the back right of the head with a blunt object, taken to MCP for evaluatin, but no imaging. He says in the last couple of days, he has had worsening HA, some swelling to the back R of the head and feeling groggy. Also, a little bit of neck soreness and states some tingling to the hands bilaterally, but no weakness.

Procedures:
23:26 Performed FB removal from ST scalp----scalp cleansed.
23:26 Performed scalp area cleansed with antiseptic. 1% lido with epi infiltrated x 5 cc and usin a #11 blade incised along the swollen area. Probed with the forceps and needle driver and removed metal FB---possibly metal shaft from taser barb. The wife states that he was tased the other night. Aftr this, tho wound was cleansed and thoroughly and the wound closed with Staples x 4.
11/08
00:41 Performed 2nd attempt based on retained barb. I re-anesthetized the pt with 1% lidocaine with epi x 4 cc. thon, took, out the prior staples. After this, I dissected down again with scissors, forceps, and needle driver. The small tuft FB nar the surface that is seen was removed. However, despite 30 min or so of trying, I was unable to

Name:Hadrian Mumpuku
MRN:000343947
Account#:006216188
Page 2 of 6

Name:Hadrian Mumpuku
Emergency Department
Age:29 years
Sex:Male
DOB:01/25/1987
MRN:000343947
Arrival Date:11/07/2016
Arrival Time:19:56
~~count#:006216188
  .d09
Private MD:
Dx:Injury Closed Head; Foreign Body

find and remove the barb. The pt. and wife were aware of this, and at
this point, wanting to abort the attempt and go home. I told them
that likely the metal inert and wouldn't cause a problem, but will
provide reference for plastic surgeon to remove. they are agreeable
to this.

MDM:
11/07
20:42 Patient medically screened.
21:29 Financial registration complete.
23:20 Data reviewed: vital signs, nurses notes. Data interpreted: Pulse
      oximetry: on room air, 96%, Interpretation: acceptable. Test
      interpretation: by ED physician or midlevel provider: not applicable.
      Counseling: I had a detailed discussion with the patient and/or
      guardian regarding: the historical points, exam findings, and any
      diagnostic results supporting the discharge/admit diagnosis,
      radiology results, there is on CT a metallic FB in the scalp over the
      swolln tissue. Iniitally didn't see any break in skin, but on second
      review, there is a small scabbed break, not even a cm in length. Pt
      denies any prior surgeries, etc. in the area.
23:21 Special discussion: in counseling with the pt, we will remove the
~~~   metallic piece.
  /08
  00:40 Special discussion: after removal of the large piece of the metal
      barb, I obtained plain Skull Xra to see if there were other pieces.
      near the surface, there is a small tuft of FB present and deeper,
      there is a barb in the Soft tissues. I showed the pt and wife re
      this. We will attempt to remove the barb..

---

- Discharge Instructions: FOREIGN BODY, Soft Tissue [Not Removed],
  FOREIGN BODY, Soft Tissue [Removed], Closed Head Injuries - HEAD
  INJURY, No Wake-Up (Adult).

---

- Notes: <P>Foreign body removed, piece of barb from the taser--</P>
  <P>As discussed, the small, hook like barb piece that we attempted
  to get was not found, but the larger metal piece removed. Despite
  attempts at localization, this was unable to be retrieved at this
  time. </P> <P>Will provide referral to plastic surgeon who could
  eveluate this and do a further scalp dissection to remove it.</P>
  <P>Pain medicine as needed and staples in the scalp out in 5 days,
  unless you go to the plastic surgeon before then who will use the
  same incision made tonight to retrieve the retained foreign body.
  This may be the better course of action since the wound will still
  be semi-open</P>

---

**Baylor Scott & White Medical Center - Centennial**

12505 Lebanon Road

Frisco, TX 75035-8296

| | | | |
|---|---|---|---|
| Patient: | MUMPUKU, HADRIAN M | Attending Provider: | ADMIRE MD,PHILLIP |
| MRN #: | 343947 | Admission Date: | 11/7/2016 |
| Account #: | 6216188 | Discharge Date: | 11/7/2016 |
| DOB/Age/Sex: | 1/25/1987 / 29 years / Male | Lab Medical Director(s): | Elvia Martinez Blanco M.D. |

### Computed Tomography

| | | | |
|---|---|---|---|
| Accession #: | Exam Date/Time: | Procedure: | Ordering Physician: |
| 333-CT-16-008574 | 11/7/2016 21:07 CST | CT Head or Brain w/o Contrast | ADMIRE MD,PHILLIP |

**Report**

Technique: Axial images from the skullbase through the vertex without contrast.  Sagittal and coronal reformatted images were recorded on the PACS for review.  The examination was performed with As Low As Reasonably Achievable (ALARA) radiation protocol.

Findings:

No intracranial hemorrhage, mass lesion, mass effect, or hydrocephalus. No CT evidence of acute infarct. No extra-axial collections.

Posterior scalp soft tissue swelling and multiple foci of subcutaneous gas within the deep posterior scalp near the midline. There is a somewhat tubular high density within the right posterior scalp, measuring 2 cm in length.  The density suggests metal.  There are ridge like changes in caliber in this structure.  There is streak artifact from this density which focally mildly obscures evaluation of the brain parenchyma.  No definite fracture is identified.

Leftward nasal septal deviation.  Paranasal sinuses and mastoid air cells are clear.

Findings discussed with Dr. Admire at 9:30 PM.

Impression:

Posterior scalp injury with laceration and soft tissue swelling.

2 cm somewhat tubular foreign body within the right posterior scalp resulting in focal artifact that mildly obscures evaluation of the adjacent brain parenchyma.  The density of the foreign body suggest metal.  History there was blunt trauma to this area with mild soft tissue swelling but no clear laceration that would allow for passage of a metallic density.  This could relate to prior intervention such as a residual piece/valve related to shunt tubing, but the patient was questioned and does not report any corresponding clinical history, and this would not explain the soft tissue adjacent gas.  There is slight irregularity in the adjacent outer table the calvarium without a well-defined fracture line visualized.



**Baylor Scott & White Medical Center - Centennial**

12505 Lebanon Road

Frisco, TX 75035-8298

| | | | |
|---|---|---|---|
| Patient: | MUMPUKU, HADRIAN M | Attending Provider: | ADMIRE MD,PHILLIP |
| MRN #: | 343947 | Admission Date: | 11/7/2016 |
| Account #: | 6216188 | Discharge Date: | 11/7/2016 |
| DOB/Age/Sex: | 1/25/1987  / 29 years       / Male | Lab Medical Director(s): | Elvia Martinez Blanco M.D. |

---

*Diagnostic Radiology*

| | | | |
|---|---|---|---|
| Accession #: | Exam Date/Time: | Procedure: | Ordering Physician: |
| 333-XR-16-014560 | 11/7/2016 23:49 CST | XR Skull < 4 Views | ADMIRE MD,PHILLIP |

**Report**
ORDERING PHYSICIAN: ADMIRE, PHILLIP

HISTORY: Possible foreign body

COMPARISON: none

TECHNIQUE: Two views of the skull

FINDINGS:

Two lateral views of the skull are presented for interpretation.  No distinct acute fractures or dislocations are seen.  Three scalp staples are seen at the level of the posterior occipital region.  A linear metallic density foreign body is seen deep within the soft tissues at this level, along the outer table of the calvarium.

IMPRESSION:

Linear hook like metallic density foreign body seen projecting deep within the soft tissues of the scalp in the occipital region on the limited lateral views provided.

RL: 460

AHC: 99053

---

\*\*\*Final Report\*\*\*
Dictated: 11/08/2016 0:18          Dictated By: BURTEA MD, IULIAN
Electronic Signature:  11/08/2016 0:18 am   Signed By: BURTEA MD, IULIAN

## B. Officer Neal's Culpable Conduct

25. At all times relevant to this action, Defendant Neal acted unreasonably, negligently, recklessly, wantonly, willfully, knowingly, intentionally and with deliberate indifference to Plaintiff's safety and rights.

---

26. Plaintiff was stopped and detained by Defendant Neal without probable cause or reasonable suspicion to believe that Plaintiff had committed a crime.

27. Defendant Neal's use of force on Plaintiff on November 5, 2016, was unreasonable and excessive and violated clearly established law.

28. At the time of the use of force in this case Defendant Neal was required to receive taser training certification.

29. At the time of the use of force in this case, Taser International, the company that manufactures the taser in question (upon information and being) had issued a product warning, that was known or should have been known to Defendant Neal, indicating that there is an increased risk of injury to the subject when taser barbs strike an individual in the chest or any other prohibited body areas like the head.

30. In previous product advisories the manufacturer of the taser sent a product warning advising taser users to only target the lower center mass (below the chest) and legs for a chest shot.

31. On November 5, 2016, Defendant Neal was aware that brain, cognitive heart rate, heart rhythm and other major bodily functions can be impacted by a taser application in prong mode to the upper chest.

32. On November 5, 2016, Defendant Neal was aware that a taser application to the upper chest in prong mode posed a risk of causing cardiac arrest.

### C. Harm to Plaintiff

33. Defendant Neal proximately caused Mr. Mumpuku to suffer extreme mental distress, terror, mental anguish, and the anguish of experiencing his last moments of life in severe physical pain.

34. Even though Plaintiff cooperated, Neal fired his taser into Plaintiff's back twice and Plaintiff fell backwards, writhing in pain.

35. There was absolutely no reason for the use of the taser gun on Plaintiff after the first two deployments.

36. The treatment of Plaintiff by the PPD was shocking and has caused Plaintiff to suffer and continue to suffer severe head, neck, shoulder and head pain due to the actions of Neal.

37. Plaintiff has also experienced crippling anxiety since he was tasered.

38. The actions of Officer Neal were shockingly violent, and the use of excessive force was done to inflict severe pain without any justification.

39. Upon information and belief, Plaintiff was racially-profiled because he is black.

40. Upon information and belief, there is a clear racial disparity in Plano and the PPD has a history and pattern of intentionally discriminating against African Americans and other minorities.

41. Upon information and belief, Neal and the Plano Police Department are under investigation due to the incident involving Plaintiff.

42. The Defendant's actions have caused Plaintiff to suffer substantial shame, embarrassment, mental and physical suffering.

43. Defendant Neal's foregoing actions of negligent and/or reckless and/or intentional.

## V.   EXCESSIVE FORCE/ASSAULT AND BATTERY

44. The above paragraphs are incorporated herein by reference.

45. Defendant Neal has, under color of law, deprived Mr. Mumpuku of rights, privileges, and immunities secured to him by the United States Constitution, including the

prohibition on unreasonable searches and seizures contained in the Fourth Amendment to the United States Constitution. At the time of Defendant Neal's conduct, Plaintiff had not committed any infraction otherwise to legally justify the force used by Defendant.

46. Defendant Neal's actions stated above, inter alia, were committed under color of state law and were violations of Plaintiff's clearly established and well settled Constitutional and other legal rights.

47. Defendant Neal placed Plaintiff in fear of physical harm and contact and then physically harmed and contacted Plaintiff without justification. Plaintiff suffered excessive force by their wrongful conduct all in violation of the Fourth, Eighth, and Fourteenth Amendments of the United States Constitution, actionable through 42 U.S.C. §1983, et seq., and at Common Law.

48. Furthermore, when a person such as the Plaintiff is seized and is not a "suspect" and have committed no crime but is forced to undergo police escalation and brutality of the situation (i.e., tased in the head), the importance of the governmental interests alleged to justify the intrusion is necessarily diminished. As such, the actions and/or omissions of said officers cannot be justified under the circumstances of the instant case.

## VI.   Section 1983 – Municipal Liability.

49. It is also well-established that municipalities are liable under 42 U.S.C.S. § 1983 for constitutional torts that are in compliance with the municipality's customs, practices, policies or procedures. A municipality is liable for constitutional deprivations visited pursuant to governmental custom even though such custom has not received formal

approval through the body's official decision-making channels. In this case, Defendants are liable because they sanctioned the custom, practice and/or policy or procedure that led to illegal seizures.

50. Defendants' actions were a customary practice and/or policy or procedure that was sanctioned by Defendants, out of which deprived Plaintiff of his civil rights by statute and both the Texas and United States Constitutions. Liability for Defendants is established under § 1983 because the arrest of citizens, with little or no justification, is a persistent, widespread practice of city employees—namely law enforcement officers—that, although not authorized by officially adopted policy, is so common and well settled as to constitute a custom that fairly represents official municipal policy. Defendants had actual or constructive knowledge of this practice, custom and/or policy or procedure and sufficiently numerous prior incidents of unauthorized seizures that a custom and accession to that custom by the Defendants' policy makers.

51. Defendants' unspoken policy of wrongfully seizing citizens is a decision that reflects deliberate indifference to the risk that a violation of particular constitutional or statutory rights will follow the decision. In the alternative, Defendants are liable under § 1983 for failure to adopt a policy of precluding officers from unreasonably seizing or arresting citizens because such failure to adopt such a policy is one of intentional choice.

52. Moreover, Defendants are liable for inadequate training of employees under § 1983. Liability attaches to Defendants because the Defendants' failure to train amounts to deliberate indifference to the rights of the persons with whom the police come in contact.

53. In particular, Plaintiff alleges that the training program in relation to the tasks the particular employee must perform is inadequate in the respect that the program fails to teach new employees that instigating the false arrest of citizens violates those citizens' constitutional rights. As such, the deficiency in training actually caused Defendants to violate Plaintiffs' constitutional rights.

## VII.    EIGTH AMENDMENT VIOLATION-FAILURE TO PROVIDE MEDICAL CARE AND TREATMENT

54. Plaintiff incorporates by reference all prior paragraphs as if fully set forth at length herein.

55. Plaintiff incorporates by reference all prior paragraphs as if fully set forth at length herein.

56. Defendant Neal showed deliberate indifference to Plaintiff's serious medical needs and wanton infliction of pain.

57. Defendant Neal's actions stated above, inter alia, were committed under color of state law and were violations of Plaintiff's clearly establish and well settled Constitutional and other legal rights.

58. Defendant Neal caused Plaintiff to suffer cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution, actionable through 42 U.S.C. §1983, et seq.

## VIII.    42U.S.C. Sec. 1983 DISCRIMINATION BASED UPON RACE

59. The above paragraphs are incorporated herein by reference.

60. By committing the foregoing acts of discrimination against Plaintiff, Defendant Neal has violated Plaintiff's clearly established and well settled Constitutional and other legal rights.

61. Said violations were done with malice and/or reckless indifference and warrant the imposition of punitive damages.

62. The aforesaid conduct of Defendant Neal was intentional and undertaken in reckless disregard for the federally-protected civil rights of Plaintiff.

63. As a result of the said violation of 42 U.S.C. § 1983, Plaintiff has suffered discrimination, humiliation, embarrassment, and other harms, and is entitled to entry of judgment in his favor, and against Defendant Neal together with an award of declaratory and injunctive relief, damages, and ancillary relief as provided by 42 U.S.C. § 1988.

## IX.   INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

64. Defendants acted intentionally or recklessly in falsely accusing Plaintiff of a crime which resulted in his arrest and being held in jail. The conduct in giving intentionally false information to the police to have someone arrested is extreme and outrageous. The actions of Defendants caused Plaintiff emotional distress and the emotional distress was severe.

## X.   DEFAMATION

65. Plaintiff is a private individual. Defendants are non-media defendants. The speech involved and related herein does not involve public issues. Thus, Plaintiff asserts that Defendants made false and defamatory statements accusing Plaintiff of a crime and

said statements were published to third parties including, but not limited to, police officers in Texas.

66. Defendants' acts constitute slander per se because they orally and by conduct communicated to third parties that Plaintiff had committed a crime. Further, Defendants are strictly liable for the defamatory statements that were made. Plaintiff suffered damages as a result. The defamatory statements accused Plaintiff of a crime and as such constitutes slander per se and damages are presumed.

67. In the alternative, Plaintiff is a private individual. Defendants are non-media defendants. The speech involved and related herein does not involve public issues. Thus, Plaintiff asserts that Defendants made false and defamatory statements accusing Plaintiff of a crime and said statements were published to third parties including, but not limited to, police officers in Texas. Defendants' acts constitute slander per se because they orally and by conduct communicated to third parties that Plaintiff had committed a crime. Defendants made such statements with actual malice because they either knew the statements were false or recklessly disregarded the truth. In the alternative, Defendants were negligent in making the statements in that they should have known the statements were false.

## XI.   VII. NEGLIGENCE AND GROSS NEGLIGENCE

68. Plaintiff asserts that Defendants owed a legal duty of care to Plaintiff. 8.02 Defendants breached the duty of care.

69. Defendants did not act in a reasonably prudent manner under the circumstances.

70. Plaintiff suffered damages proximately resulting from the negligence of Defendants.

71. Defendants were negligent in the hiring, training, supervising and disciplining of its employees.

72. Defendants were negligent in having Plaintiff detained, arrested and humiliated.

73. Upon information and belief, Plaintiff asserts that Defendants were negligent and/or grossly negligent. Defendants were negligent and/or grossly negligent in handling the investigation that led to Plaintiff's ~~arrest~~ detainment. As such, Defendants are responsible for the harm to Plaintiff.

## XII.   QUALIFIED IMMUNITY (GENERAL)

74. Qualified good faith immunity stands for the proposition that even though the civil rights of a complainant may have been violated, if the defendant engaged in the conduct in good faith there is no liability for that defendant. The standard by which a defendant is entitled to good faith qualified immunity is objective, not subjective. Defendants' actions judged by such objective standard protects, "all but the plainly incompetent or those who knowingly violate the law."

75. The determination of objective reasonableness must be based on a version of the facts most favorable to the Plaintiffs. To the extent that credibility questions exist, a fact-finder continues to be necessary.

76. In the instant case, Plaintiff alleges that Defendants are not entitled to claim, "qualified good faith immunity." Importantly, Defendants never had a good faith belief in their conduct because they acted in a manner demonstrating that they were plainly incompetent and knowingly violated Plaintiff's civil rights.

77. When the facts are taken in the light most favorable to the Plaintiff, it is clear that Plaintiff was unlawfully detained for a period of twenty-three days. Any reason given

by Defendants for their unlawful actions and/or omissions does not warrant the application of qualified good faith immunity because there was an unreasonable seizure executed without a proper warrant and a lengthy detention ending so abruptly that these actions could only be implemented by someone plainly incompetent or someone who knew or should have known they were violating the law.

78. Additionally, Defendants were never in danger nor were any other persons in the vicinity in danger of Plaintiff. Plaintiff has asserted a violation of his constitutional right to be free from unreasonable seizure; this right was clearly established at the time of Defendants' actions. Moreover, Defendants' actions were objectively unreasonable in the sense that they knew or reasonably should have known that the actions taken within their authority or responsibility would violate the constitutional rights of Plaintiff.

## XIII.   QUALIFIED IMMUNITY (OFFICER NEAL)

79. Qualified immunity does not shield Officer Neal from suit or liability. As set forth above, Officer Neal violated Plaintiff's federal rights. Additionally, at the time Officer Neal neglected Plaintiff, it was clearly established that defendant had a duty to not be deliberately indifferent to Plaintiffs serious medical needs.

80. The law clearly imposed a duty on state actors such as Officer Neal to use the level method of force that is reasonable under the circumstances. The law clearly prohibited Officer Neal from physically beating and tasing Plaintiff with no probable cause.

81. The law clearly prohibited Officer Neel from deliberately refusing to address Plaintiffs serious medical needs, especially when Officer Neal caused those medical needs. Accordingly, Officer Neal's conduct was objectively unreasonable under the state of the law at the time.

82. Officer Neal was aware that his acts and omissions violated clearly established constitutional duties. However, Officer Neal consciously disregarded his clearly-established duties because he intended to harm Plaintiff and because he was allowed to unlawfully inflict harm on other similarly situated wrongful detainees pursuant to the City's customs, policies, and practices.

83.    For these reasons, qualified immunity does not (and should not) shield Officer Neal from suit or liability.

## XIV.    <u>JURY DEMAND</u>

84. Plaintiff hereby demands a trial by jury of all issues triable by jury.

## XV.    <u>PRAYER FOR RELIEF</u>

85. Plaintiff demands judgment in his favor and against Defendants individually, jointly and/or severally, in an amount in excess of Seventy-Five Thousand ($75,000.00) Dollars, together with interest, costs, punitive damages, and attorney's fees as this Honorable Court deems just, including equitable injunctive relief.   WHEREFORE, Plaintiff prays that this Court:

> A.  Award Plaintiff compensatory damages in an amount to be shown at trial;
>
> B.  Award punitive damages against the Defendant in an amount to be shown at trial;
>
> C.  Award Plaintiff reasonable attorney's fees, costs and disbursements;
>
> D.  Grant Plaintiff such additional relief as this Honorable Court deems just, including equitable injunctive relief.
>
> E.  Immediately create formal policies and procedures with and/or remedial training programs related to the directives and instructions for use of force and the use of taser/stun guns mental subjects.

F. The appointment of a monitor to review all videotapes and reports regarding use-of-force incidents, specifically tasers.

G. An order prohibiting written reports prepared by those involved in use-of-force incidents from being revised or altered based on videotape evidence.

Respectfully submitted,

*Hadrian M. Mompuku*

~~THE OBI LAW FIRM, PLLC~~

~~/s/ Emmanuel U. Obi~~
~~Emmanuel U. Obi~~
~~State Bar No. 24058347~~
~~1910 Pacific Avenue,~~   1070 Grandys Lane
~~Suite 11700~~   #413
~~Dallas, Texas 75204~~   Lewisville, Tx 75077
~~T: (855) 462-4529~~   214-973-9410
~~F: (855) 988-5677~~
~~E: eobi@obilawfirm.com~~   hmumpuku@gmail

**ATTORNEY FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

15th day of December 2020

I hereby certify that on this ~~5thth day of November 2018,~~ I caused a PDF version of the foregoing document to be electronically transmitted to the Clerk of the Court, using the CM/ECF System for filing and for transmittal of a Notice of Electronic Filing to all CM/ECF registrants.

By: ***/s/ Emmanuel U. Obi***